Icbncass

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 Cr. 511 (SHS)

5   JUAN CASTILLO,

6              Defendant.                  Sentence

7   ------------------------------x

8                                          New York, N.Y.
                                           December 11  , 2018
9                                          2:45 p.m.

10  Before:

11
                         HON. SIDNEY H. STEIN,
12
                                              District Judge
13
                              APPEARANCES
14
    GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16  BY:  LAUREN B. SCHORR
         Assistant United States Attorney
17
    JUSTINE HARRIS
18  HEATHER HAN
         Attorneys for Defendant
19

20

21

22

23

24

25
```

Icbncass

1          (Case called)

2          MS. SCHORR:  Good afternoon, your Honor.

3          Lauren Schorr, for the government.

4          THE COURT:  Good afternoon.

5          MS. HARRIS:  Good afternoon, your Honor.  Justine

6     Harris, for Mr. Castillo.  I apologize, Judge.  My voice is

7     still recovering from a chest cold.  If I could sit down while

8     speaking so that I am closer to the microphone?

9          THE COURT:  Of course.

10          MS. HARRIS:  With me, your Honor, is Heather Han from

11     my office, and Mr. Castillo is on my left.

12          THE COURT:  Of course.  Welcome to all of you.

13          Please be seated.  This is a continuation of the

14     sentencing procedure which we started on October 25.  I took it

15     through the normal procedures for sentencing.  In essence the

16     only thing left is the actual sentence, because I wanted to get

17     additional submissions from the parties and I do have an

18     additional submission from Sher Tremonte for the defense, dated

19     November 15 recommending a particular alternative to

20     incarceration, which has an attachment.  The attachment is a

21     letter from Abraham House.  I believe that's the only

22     additional written information I have.

23          Government, did you submit anything, or did you want

24     to say anything?

25          MS. SCHORR:  We didn't, your Honor.  We generally

1    would rest on our prior representations at the last proceeding.

2         THE COURT:  All right.

3         Ms. Harris, is there anything that you wanted to add

4    to your presentation?  I have already given the defendant an

5    opportunity to speak.

6         MS. HARRIS:  Your Honor, I think we, both parties,

7    spoke at great length at the last sentencing hearing, and I

8    don't have I think really much qualitatively to add.

9         I would be happy to discuss any particulars about the

10    Abraham House or any questions that your Honor might have,

11    because I have worked with them in the past and I know that

12    they have experience with the probation department in this

13    district.  So I would be happy to discuss any particulars

14    further should your Honor wish.

15         The only other sort of additional thought I had in

16    reviewing the materials and thinking through the sentencing

17    today was just again how similar in many ways this case is to

18    the one confronted by the Supreme Court in *Gall*.  There, as

19    your Honor knows, the defendant at the time of the criminal

20    conduct was young, 21.  Here, Mr. Castillo was 18.

21         There were others involved in the criminal conduct in

22    *Gall*.  They received terms of imprisonment.  But because the

23    defendant in *Gall* had achieved what the district court and the

24    courts above conceded was permanent and transformative

25    rehabilitation, had left the conspiracy, gone to college, years

Icbncass

1    had passed, that a sentence of probation was appropriate, and

2    that sentence was upheld and affirmed ultimately by the Supreme

3    Court.

4         In addressing some of the very same concerns that the

5    government had raised and I know the Court was concerned with

6    as well is the notion that this lenient, a sentence of

7    probation or a sentence that imposes alternatives would be

8    perceived as lenient, the court said the following, and it's

9    quoting actually from the district court in the case:  "A

10   sentence of imprisonment may work to promote not respect but

11   derision of the law if the law as viewed as merely a means to

12   dispense harsh punishment without taking into account the real

13   conduct and circumstances involved in sentencing."

14        I am not suggesting that that is what the Court is

15   about to do here, but certainly, with all the other sentencing

16   factors really addressed -- rehabilitation, incapacitation, is

17   it needed?  Individual deterrence, is it needed? -- there's

18   really no empirical basis for general deterrence.  What's left

19   is the idea of a just punishment, promoting respect for the

20   law, and given the particular facts of this case --

21        THE COURT:  Yes.  But as we discussed at the end of

22   the sentencing proceeding, and as I think I indicated -- I

23   reread the transcript of that October 25 sentencing

24   proceeding -- I am concerned about keeping the relative

25   positions appropriate within this conspiracy.

Icbncass

1          MS. HARRIS:  Your Honor, they had the same problem in

2    *Gall*.  The individuals, you know, who were involved in the

3    conduct, there were other individuals, received terms of

4    imprisonment of 30 and 37 months.

5          In fact, just following the quote that I read to your

6    Honor, they addressed the question about unwarranted

7    disparities and say it would be also a question of -- to give

8    similar sentences would result in unwarranted similarities

9    between defendants who are differently and uniquely situated.

10          So, I think the *Gall* precedent says -- I mean really

11    says to your Honor, that, yes, obviously we take into account

12    the relative positions in the criminal conduct and the relative

13    culpability of the individuals, but we also have to take into

14    account what their individual circumstances are.  And if one

15    defendant has made a profound transformation in their lives in

16    a way that warrants a substantially different sentence, the

17    mere fact that they were all in the same criminal conduct

18    together or similarly situated seven years earlier does not

19    trump the need to consider those individuals' circumstances and

20    recognize the individual who he is now on the day of

21    sentencing, an individual who has been a stay-at-home father

22    essentially for the last couple of years and has turned his

23    life around.  I think that the successful completion of

24    probation and his job prospects once his case is complete are

25    all a testament to that.

Icbncass

1          So what's left, and your Honor said what is left is

2     the idea of promoting respect for the law or some sort of just

3     punishment, recognizing the seriousness of the offense.

4          THE COURT:  That was part of what Ms. Estes was

5     arguing last time as well, but on behalf of the government.

6     That is to say, I think her quote is everybody in the Bronx

7     knows about these sentences, each and every one, and to suggest

8     that somebody was involved in three shootings, including one

9     that he did himself and injured somebody, were to get as it

10    were no time would not promote respect for the law.

11         MS. HARRIS:  We all looked at the transcript, your

12    Honor.  I think you, the Court, made my argument and said, If I

13    were Justine Harris, I would say that in fact this kind of

14    sentence that would recognize that doesn't narrowly telescope

15    only the offense conduct, but, as consistent with the statute,

16    looks not only at the offense conduct, but the individual

17    personal history and characteristics and sentences Mr. Castillo

18    not just for his crime but for the person who he has become;

19    that especially in communities where it's perceived often that

20    sentences of imprisonment and harsh sentences of imprisonment

21    are often imposed over time and over history mechanically or in

22    a way that is perceived as not sufficiently merciful, that a

23    sentence that does require something of Mr. Castillo -- that's

24    why we worked really hard, your Honor, to propose and I think

25    we've proposed sort of a three-tiered punishment in a sense

Icbncass

1    that does require something of him in both time, energy,

2    emotion, mental work.  You know, that does require something of

3    him, but allows him to remain in the community, to help make

4    amends to his community, and, importantly, to continue being

5    the father that he has worked very hard to be.

6            I know in many, many cases we say, or courts say,

7    look, you know, it is all sad and terrible for the family and

8    children, but the defendant should have thought about that

9    before they committed the crime.  But here it is a very

10   different situation because of the timing of the prosecution,

11   your Honor.

12           He wasn't a father.  He wasn't even -- he was 18 years

13   old.  Seven years have passed.  He became a father two and a

14   half years ago, and he was well on his way to successfully

15   completing probation and his life was ahead of him without the

16   notion that there was a threat of prosecution.

17           So to fashion a sentence that would allow him to

18   remain in the community, to continue being a father we think

19   would be for the community and I think this is consistent --

20   regardless of the anecdotal evidence that Ms. Estes offered --

21   consistent with the academic literature and the penological

22   literature, that that kind of sentence that takes into account

23   the whole person and forces amends but allows him to remain in

24   the community and help rebuild the community and be a father

25   would be actually more meaningful and promote more respect for

Icbncass

1    the law than a sentence that just says, this happens, it

2    doesn't matter if it was seven years ago, you still, no matter

3    what, no matter how perfect of a Boy Scout you are now, you

4    still have to go to jail because that's the law, that's the

5    law.

6          I think this is a case, given the particular facts and

7    circumstances, that justifies -- I understand it is an

8    extraordinary request, but thinking outside of the box in a

9    sense about fashioning something that's different and it merits

10   a different approach.

11         The three tiers, with the Abraham House as one

12   component -- and I had a client go through the MRT therapy,

13   which is something I have only heard in the criminal justice

14   system, and it is a cognitive behavioral therapy model for

15   individuals who break the law basically.  As described in the

16   attachment from Abraham House, it focuses on really developing

17   sort of different kinds of moral reasoning and changes in

18   behavior, which is, Mr. Castillo said, like going intensive

19   therapy, group and individual.  It's not easy for anyone to do.

20   He's someone who sometimes is fairly quiet in his words and not

21   that chatty, and I think forcing him to engage, not only on an

22   introspection level, which is something he's done I think more

23   naturally over the last couple of years, but in a way that is

24   an improved setting and that holds him accountable with an

25   individual therapist I think is going to be a very important

Icbncass

1    and substantial requirement that is imposed on him.

2           That is obviously coupled with tasks that the director

3    of the program acknowledges are penal in nature in the sense

4    that they're mandatory.  Compliance is expected, and if there's

5    no compliance, they can report to the probation department.

6           And it's a long-term program.  You know, the minimum

7    term of participation is a year, and many stay on for more than

8    that year.

9           We also proposed, your Honor, that, in addition to

10   that program, that Mr. Castillo, because of his connection with

11   youth, as we've said, he obviously not only has a close bond

12   with his own daughter but he has a close bond with his autistic

13   nephew, he has a close bond with the young sons of a family

14   friend who wrote letters to your Honor, and there is a friend

15   who ran a youth organization that talks in her letter about how

16   Mr. Castillo often came and volunteered at basketball

17   tournaments.

18          We believe it would be also appropriate, in addition

19   to the Abraham House requirement, to impose a community service

20   requirement focusing on youth.  That is a program that the

21   probation department and Mr. Castillo could work on together.

22          Finally, your Honor, in terms of punitive sanctions,

23   while the Supreme Court has recognized that probation is

24   punishment, there are limits on your freedom, here, as your

25   Honor knows, for 15 months Mr. Castillo has been subject to a

Icbncass

1    curfew.  He's worn a bracelet.  The Court could extend that

2    curfew, could extend those limations for as long as the Court

3    deems necessary to really continue that sense of punishment.

4         While awaiting sentencing Mr. Castillo has basically

5    spent his time dropping off his daughter, picking her up from

6    school.  He often picks up Genesis, the five-year-old,

7    basically his daughter's five-year-old aunt for whom he also

8    cares, taking care of them after school and there for either of

9    them should there be a sick day.

10        Finally, your Honor, what we do ask is that, if your

11   Honor is still considering -- and I know in fairness it was the

12   first thing you said at sentencing on October 25 and the last

13   thing you said that there is this instinctive need instinctual

14   need or sort of a need for some kind of punishment or

15   incarceration, and if your Honor is not convinced that what we

16   propose is an adequate substitute for punishment or

17   incarceration, and if incarceration or some kind of locked up

18   facility is still required or deemed required by this Court,

19   that your Honor consider imposing intermittent confinement --

20   this is important, your Honor -- as a condition of probation.

21        I did a fair bit of research on that Listserv among

22   defense lawyers, who provided some examples that I cited to

23   your Honor in the letter.  The consensus is that obviously as a

24   BOP sentence intermittent confinement does not work, because

25   MDC -- BOP does not have the administrative flexibility to sort

Icbncass

1    of check people in and check people out, but if it's done as a

2    condition of probation, where it is supervised by the probation

3    department, probably more easily in the setting of a halfway

4    house, that we would ask that your Honor consider using that

5    tool, another alternative tool to the traditional sentence of

6    imprisonment as an alternative, in that it will allow him to

7    begin the work process, any kind of program that your Honor

8    would require and at the same time maintain his duties to his

9    family, his community, and most importantly his daughter.

10            I obviously care very deeply about this case and I

11    would talk at great length, and I don't want to, you know,

12    repeat and tread on the Court's patience.

13            THE COURT:  Thank you.  I appreciate it.

14            Mr. Castillo, if you wish to say anything, you would

15    certainly have an opportunity to do so now.  It is entirely up

16    to you.

17            THE DEFENDANT:  Thank you, your Honor.

18            THE COURT:  Speak loudly, sir.

19            THE DEFENDANT:  I don't really want to repeat what I

20    said last time, but I do want to stress how remorseful I am for

21    my actions in the past.  I told you before and I want to say it

22    again, my actions were wrongful to the community.  I think that

23    Abraham House program is a great fit for me, it is right in the

24    community that my actions have wronged, so it will help me get

25    back to that community and my way of making amends.

Icbncass

1          The drug and the alcohol testing will help me from

2     falling back into old habits if I do get a probation sentence.

3     Therapy sessions won't be easy for me at all, but I know they

4     will help me deal with things from my past and be a better man.

5     If I do get a chance to return home to my family, I want to

6     continue to mentor troubled teens so they won't end up like me.

7          Thank you.

8          THE COURT:  Thank you.

9          MS. SCHORR:  Your Honor, if I may, just very briefly?

10          THE COURT:  Yes.

11          MS. SCHORR:  Again, not to reiterate points that were

12     made by Ms. Estes at the last proceeding, but just to respond

13     briefly to Ms. Harris.

14          We reviewed the defense's submission and the programs

15     that are being offered.  I would just reiterate that, looking

16     at the entirety of 3553(a) and considering the personal

17     circumstances of the defendant are quite significant, but the

18     nature and circumstances of the offense and the conduct and the

19     need to provide just punishment and respect for the law --

20     again, I won't belabor the points that were raised by

21     Ms. Estes, but I think we do believe that those factors

22     necessitate some form of incarceration here.

23          There were three shootings the defendant was involved

24     in.  These are extremely violent, extremely dangerous, and

25     there is a very important message to be sent that, if you

Icbncass

```
 1    engage in that kind of conduct, even years ago, at 18, you have

 2    to face a consequence for that.

 3              So I just want to reiterate that point.

 4              THE COURT:  That was seven years ago.

 5              MS. SCHORR:  It was seven years ago, your Honor.

 6              THE COURT:  He's done -- I think it was 13 months.

 7              MS. SCHORR:  It was seven years ago.  He did 13 months

 8    on different conduct.

 9              THE COURT:  Related conduct.  It's part and parcel.

10    There would be a credit under 5K2.23 in any event.

11              MS. SCHORR:  Absolutely.  Related conduct is

12    considered as part of the guidelines analysis here, and we are

13    not disputing that in any way.  But I do think being involved

14    in a violent gang, being a core member of it -- recognizing, of

15    course, it was years ago.  He was 18 years old; he was not 15.

16    That was still years ago, but at 18 you are treated as an

17    adult.  I think being involved in three shootings, you know,

18    frankly, the defendant is lucky that only one person was

19    injured.

20              THE COURT:  That is true.

21              MS. SCHORR:  And, you know, perhaps specific

22    deterrence has been addressed through his prior sentence, but I

23    do think promoting respect for the law, just punishment, having

24    a sentence that is comparable to the other defendants that are

25    similarly situated to him here and general deterrence, to leave
```

Icbncass

1   an important message in this Bronx community and other Bronx

2   communities that, you know, just because you do a shooting, you

3   get away with it for a period of time, there still has to be a

4   consequence for engaging in that kind of violence.  So I just

5   wanted to reiterate those points.

6           THE COURT:  All right.  Thank you.

7           I am going to end where I started.  I find this to be

8   a particularly difficult sentence, given the individual

9   circumstances of this defendant.  He does seem to have turned

10  his life around after the 13 months on the drug sentence and

11  doing federal time.

12          I have spoken to both of his probation officers, his

13  prior one and his current one.  I have also spoken to the

14  program officer in the probation department here about the

15  various programs.

16          I am going to take a chance on this defendant.  I am

17  not going to make it easy, but I am not going to send him back

18  to prison now, given the substantial postrelease rehabilitation

19  by this defendant subsequent to the release from the Oetken

20  sentence.

21          He has had absolutely no run-ins with the law since

22  then.  He has a new probation officer.  The old one speaks

23  quite highly of him.  He does seem to have turned it around.  I

24  want to build on that, so I am going to be sentencing him to

25  the alternative to incarceration program in Abraham House.

Icbncass

1    He's going to have to successfully complete it.  As the defense

2    attorney said, there is a one-year minimum, and he can go up to

3    three years.  And that involves service time, apparently not

4    just talking with troubled youth, but physical labor for about

5    six hours a week as well as that MRT therapy and vocational

6    training.

7           That will be for one to three years.  It is up to the

8    Abraham House to determine whether he has successfully

9    completed the program or not, but I am going to require

10   successful completion.

11          I am going to have probation for four years.  I am

12   going to add on to the Abraham House completion 80 hours of

13   community service per year of probation, with a program to be

14   worked out with his probation officer, presumably involving

15   working with youth, but that will be between this defendant,

16   the defense attorney, and the probation department.

17          I am going to require monthly progress reports to be

18   given to the probation department and then forwarded to me for

19   the first year every month, and then after that the frequency

20   will be at the discretion of his probation officer.

21          I am also going to require that there be location

22   monitoring, specifically radio frequency monitoring, for an

23   additional 12 months.  I am going to waive the cost of

24   participation in location monitoring, but part of that location

25   monitoring or, in addition to the location monitoring, I am

Icbncass

going to require that the defendant be restricted to his

residence every day from 7 p.m. to 6 a.m.  So there is a

curfew.

And, of course, the standard and mandatory conditions.

I believe those are sufficient to meet the ends of

criminal justice system.  I have considered at length all of

the factors in 18 U.S.C. Section 3553(a).

That is my determination.

Defendant will rise, and I will formally impose

sentence.

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  Pardon me?

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  Well, it's going to be up to you, sir, to

show me that I was right.  As I say, I am taking a chance.  I

think you have turned your life around, but you are going to

have to follow the schedule, and if you violate any term or

condition of supervised release, you will be back before me.  I

want to watch your progress through the progress reports, but I

think you have earned a shot.  I'm trying to give it to you.

THE DEFENDANT:  Thank you, your Honor.  I appreciate

it.

THE COURT:  I will now impose sentence and allow the

parties to make any legal objections.  I find that the total

offense level is 22, the criminal history category is III, the

Icbncass

1    guideline range is 51 to 63 months.  However, the defendant is

2    entitled to a credit of 12 months pursuant to United States

3    Sentencing Guideline 5K2.23.

4         I am going to vary, however, under *Booker*, *Fanfan* and

5    *Gall* for his youth, for postrelease rehabilitation under *United*

6    *States v. Pepper* and other cases.

7         I am going to impose four years of probation.

8         So, pursuant to the Sentencing Reform Act of 1984, it

9    is the judgment of this Court that the defendant, Juan

10   Castillo, successfully complete four years of probation under

11   the supervision of the probation department.  His four years of

12   probation shall be served with the conditions recommend by the

13   probation department; namely, the following mandatory

14   conditions:

15        He shall not commit another, federal, state or local

16   crime;

17        He shall not illegally possess a controlled substance;

18        He shall not possess a firearm, dangerous weapon, or

19   destructive device;

20        He shall refrain from any unlawful use of a controlled

21   substance;

22        He shall submit to one drug test within 15 days of his

23   placement on probation and at least two unscheduled drug tests

24   thereafter as directed by his probation officer;

25        He shall cooperate in the collection of DNA as

Icbncass

1  directed by his probation officer;

2          He also shall comply with standard conditions 1

3  through 13, plus the following special conditions:

4          He shall successfully complete the alternative to

5  incarceration program of Abraham House, to which he has already

6  been admitted.  There is a place for him.  He shall complete

7  all of the aspects of that program including moral reconation

8  therapy and the service requirements of that program as well as

9  the vocational training and job requirements.

10          Another special condition is he shall fulfill 80 days

11  per year of community service for each of the four years of

12  probation, the program to be worked out with his probation

13  officer.  Presumably it will be focusing on working with youth,

14  but that will be up to the defense attorney, the defendant, and

15  the probation officer.

16          I am going to require monthly progress reports to be

17  given to me by the probation department for the first year of

18  probation.  After that the frequency will be at the discretion

19  of the probation officer.

20          In addition, Mr. Castillo will be monitored in the

21  form of location monitoring, that is, radio frequency

22  monitoring, for an additional 12 months, and he must abide by

23  all technology requirements.  I am waiving the cost of

24  participation in the location monitoring program.

25          As part of the location monitoring program, he is

1   restricted to his residence every day from 7 p.m. to 6 a.m.

2          I am also imposing a search requirement, which I did

3   not mention before.  Mr. Castillo shall submit his person,

4   residence, place of business, vehicle, and any other premises

5   under his control to a search on the basis that his probation

6   officer has a reasonable belief that contraband or evidence of

7   any violation of a condition of probation may be found.  The

8   search must be conducted at a reasonable time and in a

9   reasonable manner.

10          Failure to submit to a search by Mr. Castillo may be

11   grounds for revocation.  Mr. Castillo shall inform all of the

12   residents that the premises are subject to search pursuant to

13   that condition.

14          Mr. Castillo shall report to the probation department

15   within 72 hours of the judgment being entered in this case.

16          I am not imposing a fine because I find Mr. Castillo

17   lacks the ability to pay a fine after taking into account the

18   presentence report and his lack of assets and his family

19   responsibilities.

20          I am not imposing restitution because there is no

21   victim pursuant to 18 U.S.C.3663.

22          I hereby order Mr. Castillo to pay to the United

23   States a special assessment of $100, which is due immediately.

24          As I've said, I have varied below the guideline range

25   in this case due to youth and the substantial postrelease

Icbncass

1    rehabilitation.  I believe the sentence is appropriate.

2          I have factored in all of the factors in 18 U.S.C.

3    3553(a).

4          Ms. Harris, do you know of any legal reason why the

5    sentence should not be imposed as I have stated it?

6          MS. HARRIS:  No, your Honor.

7          Thank you very much.

8          THE COURT:  Ms. Schorr, do you?

9          MS. SCHORR:  No, your Honor.

10         THE COURT:  I hereby order the sentence to be imposed

11   as I have stated it.

12         Mr. Castillo, you have the right to appeal the

13   sentence I have just imposed on you, sir, and if you are unable

14   to pay the cost of an appeal, you have right to apply for leave

15   to appeal in forma pauperis.

16         Is there a limited waiver of appeal rights in the

17   plea?

18         MS. SCHORR:  There is, your Honor.

19         THE COURT:  What is it?

20         MS. SCHORR:  I have to just -- one moment.

21         THE COURT:  I assume it is 63.

22         MS. SCHORR:  Exactly.  Top of the guidelines.

23         THE COURT:  All right.

24         Mr. Castillo, I wish to inform you that in your plea

25   agreement you agreed to waive the right to appeal the sentence,

Icbncass

1   and you agreed to waive your right to collaterally attack the

2   sentence if I sentence you to 63 months' incarceration or less,

3   and I have done that.  If you make a request, sir, the Clerk of

4   the Court will prepare and file a notice of appeal on your

5   behalf immediately.

6           Do you understand your appeal rights?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Government, are there any open counts or

9   underlying charges here?

10          MS. SCHORR:  Yes, your Honor.  The government moves to

11  dismiss any underlying indictments as to Mr. Castillo.

12          THE COURT:  All right.  That's granted.

13          Mr. Castillo, your attorney will tell you how

14  substantial the variance is that I've given you.  As I've said,

15  I am taking a chance to you.  Don't mess up.  You are going to

16  be fine.  I am taking a chance because I firmly believe you

17  will be fine.

18          You can thank your attorneys, you can thank yourself

19  for how you've turned your life around, and obviously your

20  family as well and the government, which I think has been very

21  fair here all around.

22          Good luck to you, sir.  I hope I don't see you again.

23          THE DEFENDANT:  Thank you, your Honor.

24          MS. HARRIS:  Thank you very much, Judge.

25          (Adjourned)